Jason J. Jardine (SBN 234,443)
jason.jardine@knobbe.com
Ashley C. Morales (SBN 306,621)
ashley.morales@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Phone: (858) 707-4000
Facsimile: (858) 707-4001

Benjamin A. Katzenellenbogen (SBN 208,527)
ben.katzenellenbogen@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff,
CHRISTOPHER DUTTON, an individual

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DUTTON, an individual,<br><br>           Plaintiff,<br><br>     v.<br><br>ASEPTISCOPE, INC., a California Corporation,<br><br>           Defendant. | Civil Action No. '23CV1158 BEN JLB<br><br>**COMPLAINT FOR CORRECTION OF INVENTORSHIP PURSUANT TO 35 U.S.C. § 256**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Christopher Dutton ("Mr. Dutton") for his Complaint against Defendant AseptiScope, Inc. ("AseptiScope") alleges as follows:

## JURISDICTION AND VENUE

1. This Complaint is for claims to correct inventorship on an issued patent, all claims arising under the United States patent laws, 35 U.S.C. § 101 *et seq*.

2. This Court has subject matter jurisdiction pursuant to at least 28 U.S.C. §§ 1331 and 1338(a), as this is an action arising under the United States patent laws, including at least 35 U.S.C. § 256.

3. AseptiScope is subject to the personal jurisdiction of this Court because its principal place of business is within this Judicial District, and because AseptiScope has committed the acts complained of in this district.

4. Venue is proper in this Judicial District pursuant to at least 28 U.S.C. § 1391(b) because AseptiScope's principal place of business is within this Judicial District, and because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

## THE PARTIES

5. Mr. Dutton is an individual residing in Southern California.

6. Upon information and belief, AseptiScope is a Delaware corporation with its principal place of business at 4061 Stephens Street, San Diego, California 92103.

## COMMON ALLEGATIONS FOR ALL CLAIMS FOR RELIEF

7. Upon information and belief, Kelly Powers is a founder, co-owner, and Chief Operating Officer of AseptiScope.

8. Upon information and belief, in September 2018, AseptiScope was working to develop a hands-free stethoscope disk cover dispenser and disposable disk delivery cartridge device ("Disposable Cover Device").

///

9. Upon information and belief, AseptiScope was working with a contract manufacturer on developing a carrier/disk component for the Disposable Cover Device while working with a product development engineer on the design of the dispenser and cartridge prototypes that had not yet been produced.

10. Upon information and belief, AseptiScope was working to find an adhesive formula that would effectively adhere the disk covers to the rolled carrier tape for delivery, then allow the disks to be individually removed from the tape after the disk of a stethoscope was pressed against the face of the delivered cover.

11. On September 8, 2018, Mr. Dutton and Ms. Powers discussed in person the work Ms. Powers was doing at AseptiScope regarding the Disposable Cover Device. Ms. Powers informed Mr. Dutton that she and AseptiScope were developing tape rolls holding a number of individual disks that would be removed by pressing a stethoscope to an adhesive disk and then pulling the stethoscope away, resulting in the removal of the adhesive disk from the tape and application of adhesive disk to the stethoscope.

12. Mr. Dutton expressed to Ms. Powers his belief that adding a peeling mechanism, similar to the operation of a retail price gun or a product called "drafting dots," to the Disposable Cover Device could provide a more reliable and consistent removal of the disk covers from the carrier tape for delivery to a stethoscope.

13. After the September 8, 2018 meeting, Mr. Dutton and Ms. Powers repeatedly discussed development of the Disposable Cover Device in person and via text messages, phone calls, and emails.

14. For example, on September 17, 2018, Mr. Dutton sent a text message to Ms. Powers referencing the potential solution of running the tape through a peeling mechanism that Mr. Dutton previously explained to Ms. Powers in person during the meeting on September 8, 2018.

/ / /

15. The text message included a short video related to Mr. Dutton's proposed solution showing the "drafting dots" product he had described to Ms. Powers as an example of how the peeling mechanism could work in the Disposable Cover Device.

16. Mr. Dutton also showed and explained his proposed solution to Ms. Powers in person later that day and provided her with a box of "drafting dots" to analyze.

17. Also on September 17, 2018, Ms. Powers sent a text message to Mr. Dutton asking him to accompany her on a trip to visit AseptiScope's manufacturer of the carrier/disk component of the Disposable Cover Device.

18. On September 21, 2018, during a drive to Santa Monica, California, Ms. Powers told Mr. Dutton about the development of the current design and first prototype of the Disposable Cover Device.

19. Upon information and belief, Ms. Powers attended the meeting with the carrier/disk manufacturer in Chatsworth. Mr. Dutton did not.

20. On September 23, 2018, during the drive back from Santa Monica, Ms. Powers and Mr. Dutton further discussed the development of adhesive recipes and material combinations as well as Mr. Dutton's peeling mechanism invention for the operation of the dispenser and cassette.

21. During this conversation, Mr. Dutton reiterated to Ms. Powers that AseptiScope could most likely simplify their efforts of finding the correct adhesive combination and consistently achieve proper separation of the disk covers from the carrier tape by running the tape through a peeling mechanism. Mr. Dutton suggested studying the operation of a retail pricing gun and the "drafting dots" products as examples of a suitable peeling mechanism.

22. On November 8, 2018, Ms. Powers sent Mr. Dutton a series of texts that included photos of the latest batch of disk cover tape, and Mr. Dutton and

/ / /

Ms. Powers had a short exchange about the potential viability of the Disposable Cover Device.

23. On January 30, 2019, Ms. Powers sent Mr. Dutton a text message detailing continuing difficulties AseptiScope was having with the test sample rolls on the Disposable Cover Device.

24. In October and November 2019, Ms. Powers and Mr. Dutton exchanged additional text messages and met in person discussing Ms. Powers' work developing the Disposable Cover Device, including that she and AseptiScope had not yet resolved the problems she and Mr. Dutton had discussed the previous year.

25. Mr. Dutton again reiterated to Ms. Powers that implementing a peeling mechanism to help separate the disk covers from the carrier tape would resolve the problems Ms. Powers identified AseptiScope was having with the Disposable Cover Device.

26. Late on the evening of November 17, 2019, through the early morning of November 18, 2019, Ms. Powers and Mr. Dutton discussed in person AseptiScope's continued problems with getting the adhesive "recipe" to provide consistent results, and AseptiScope's development and implementation of an embodiment of Mr. Dutton's peeler mechanism invention. Mr. Dutton suggested to Ms. Powers a potential embodiment of the peeling mechanism invention that would work by winding the tape through two stainless steel pins that would slide across the application window of the dispenser to separate the disk covers from the adhesive holding them to the carrier tape.

27. Ms. Powers then emailed Mr. Dutton technical drawings for the dispenser and cartridge, from which Mr. Dutton created a 3D model of the mechanism.

28. Early in the morning of November 18, 2019, Mr. Dutton sent Ms. Powers an email containing 3D images detailing an alternative embodiment of

Mr. Dutton's peeler pin invention that Ms. Powers and AseptiScope were working to implement.

29. Upon information and belief, following this discussion, Ms. Powers met with product development engineers employed by AseptiScope to finalize the design of and 3D print a new cartridge prototype that included the addition of an embodiment of Mr. Dutton's peeling mechanism invention.

30. On November 21, 2019, Ms. Powers sent a text message to Mr. Dutton stating: "Excellent day so far baby!  The peel mechanism is working great within a cassette!"

31. Thereafter, Ms. Powers and Mr. Dutton continued to exchange text messages and meet in person to discuss and work on the development and testing of the Disposable Cover Device.

32. On January 29, 2021, AseptiScope filed in the United States Patent and Trademark Office non-provisional U.S. Pat. Application No. 17/163,224, entitled "Cartridges, Dispensers, and Kits for Dispensing Instrument Covers," ("the '224 Application").

33. The '224 Application discloses and claims Mr. Dutton's peeler pin invention and uses of that invention.

34. The '224 Application named as inventors Scott W. Mader, Kelly M. Powers, W. Frank Peacock, Alan S. Maisel, and Yuval Shenkal.

35. The '224 Application did not name Mr. Dutton as an inventor.

36. Claims 1 and 9 of the '224 Application recite Mr. Dutton's peeler pin invention.

37. While the '224 Application was pending before the Patent Office, Mr. Dutton contacted AseptiScope and Ms. Powers on multiple occasions about correcting inventorship of the '224 Application.  AseptiScope and Ms. Powers rebuffed or ignored Mr. Dutton each time.

/ / /

38. On June 14, 2022, the '224 Application issued as United States Patent No. 11,358,782 ("the '782 Patent"). Claims 1 and 8 of the '782 Patent are independent claims.

39. Claim 1 of the '782 Patent recites Mr. Dutton's peeler pin invention:

> A cassette for automatic touch-free dispensing of disposable instrument covers onto an instrument, the cassette comprising: a supply spool configured to hold a backing member having the disposable instrument covers disposed thereon; a tape spool configured to hold spent backing member without the disposable instrument covers disposed thereon, the tape spool spaced apart from the supply spool to define a flat area of the backing member disposed between the supply and tape spools, wherein the flat area further comprises a resistance section, the resistance section comprising a parallel section attached directly to the cartridge by way of perpendicular edges, thereby forming a space between the backing member and the resistance section; and ***a peeler pin positioned proximate to the supply spool to change direction of a path of the blocking member to partially separate the disposable instrument covers from the backing member to ease the transfer of the disposable instrument cover onto the instrument***; wherein the supply and tape spools are configured to rotate such that the disposable instrument covers are exposed through a cassette window positioned at a front face of the cassette, wherein the cassette comprises a lid and separate spool structures to interface with the supply spool and the tape spool within the cassette.

(Emphasis added.)

40. Claim 8 of the '782 Patent also recites Mr. Dutton's peeler pin invention:

> A kit comprising a dispenser and a cassette for automatic touch-free dispensing of disposable instrument covers onto an instrument, the cassette

comprising: a supply spool configured to hold a backing member having the disposable instrument covers disposed thereon; a tape spool configured to hold spent backing member without the disposable instrument covers disposed thereon, the tape spool spaced apart from the supply spool to define a flat area of the backing member disposed between the supply and tape spools, wherein the flat area further comprises a resistance section, the resistance section comprising a parallel section attached directly to the cartridge by way of perpendicular edges, thereby forming a space between the backing member and the resistance section, wherein the supply and tape spools are configured to rotate such that the disposable instrument covers are exposed through a cassette window positioned at a front face of the cassette; ***a peeler pin positioned proximate to the supply spool to change direction of a path of the backing member to partially separate the disposable instrument covers from the backing member to ease the transfer of the disposable instrument cover onto the instrument***; a dispenser housing with a lid configured to house the cassette, the dispenser housing comprising an access window configured to permit insertion of the instrument therethrough to permit coupling of the instrument to the disposable instrument cover exposed at the access window and positioned at the flat area of the backing member; wherein the supply and tape spools are configured to rotate such that the disposable instrument covers are exposed through the access window, wherein the cassette comprises a lid and separate spool structures to interface with the supply spool and the tape spool within the cassette.

(Emphasis added.)

41. All other claims in the '782 patent also recite Mr. Dutton's peeler pin invention because they depend from Claims 1 or 8 and incorporate the limitations of Claims 1 or 8.

42. Upon information and belief, before Mr. Dutton disclosed his peeler pin invention to Ms. Powers, AseptiScope's disposable stethoscope cover dispenser products lacked any peeler pin technology.

43. AseptiScope and Ms. Powers' lack of possession of Mr. Dutton's peeler pin technology is evidenced by AseptiScope's prior patent filings.

44. Upon information and belief, on December 22, 2017, AseptiScope filed a patent application on its then-current disposable stethoscope cover dispenser products. That application issued on June 9, 2020, as U.S. Patent No. 10,676,270 ("the '270 Patent").

45. The disclosure and claims of the '270 Patent lack any reference to Mr. Dutton's peeler pin invention. For example, Claim 1 of the '270 patent states:

> A kit comprising a dispenser and a cartridge for automatic touch-free dispensing of disposable stethoscope covers, the cartridge comprising: a first spool configured to hold a backing member having disposable stethoscope covers disposed thereon; a second spool configured to hold spent backing member without disposable stethoscope covers disposed thereon, the second spool spaced apart from the first spool to define a flat area of the backing member disposed between the first and second spools, the flat area sized to allow contact between a stethoscope head and the disposable stethoscope covers, wherein the flat area further comprises a resistance section, the resistance section comprising a parallel section attached directly to the cartridge by way of perpendicular edges, thereby forming a space between the backing member and the resistance section, the resistance section providing resistance to the backing member once the stethoscope head contacts the disposable stethoscope cove; and a dispenser housing with a lid configured to house the cartridge which houses the backing member having the disposable stethoscope covers disposed thereon and the spent backing member without disposable stethoscope

covers disposed thereon, the dispenser housing comprising a cartridge window sized and configured to permit only insertion of the stethoscope head therethrough to permit coupling of the stethoscope head to the disposable stethoscope cover exposed at the cartridge window and positioned at the flat area of the backing member, wherein each disposable stethoscope cover is removably affixed to the backing member and wherein the disposable stethoscope cover is disposed on top of the backing member, wherein he first and second spools are configured to rotate such that the disposable stethoscope covers are exposed through the cartridge window.

46. AseptiScope's introduction of Mr. Dutton's peeler pin invention into its patent filings between December 22, 2017, and January 29, 2021 (when AseptiScope filed the '224 Application), corresponds to when Mr. Dutton disclosed his peeler pin invention for use in disposable stethoscope cover dispenser products to Ms. Powers.

## FIRST CLAIM FOR RELIEF
## (Correction of Inventorship - 35 U.S.C. § 256)

47. Mr. Dutton realleges and incorporates by reference the allegations set forth in paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48. The '782 Patent discloses and claims Mr. Dutton's peeler pin invention.

49. The '782 Patent claims subject matter that Ms. Powers obtained from discussions with, or at most jointly conceived with, Mr. Dutton.

50. Mr. Dutton's inventive contribution to the '782 Patent includes at least "a peeler pin positioned proximate to the supply spool to change direction of a path of the backing member to partially separate the disposable instrument covers from the backing member to ease the transfer of the disposable instrument cover onto the instrument[.]"

51. Mr. Dutton is at least an inventor of any patentable subject matter claimed in at least Claims 1 and 8 of the '782 Patent and all claims that depend from Claims 1 or 8.

52. The '782 Patent erroneously omits Mr. Dutton as an inventor.

53. Upon information and belief, one or more of the currently named inventors made no inventive contribution to any claim of the '782 Patent.

54. Upon information and belief, the '782 Patent erroneously names as inventors one or more of the currently named inventors.

55. Pursuant to 35 U.S.C. § 256 and 28 U.S.C. § 2201, Mr. Dutton seeks an order directing the United States Patent Office and its Director to correct the inventorship of the '782 Patent to name Mr. Dutton as an inventor and remove any currently named inventor who did not make an inventive contribution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mr. Dutton prays for judgment in his favor against Defendant AseptiScope for the following relief:

A. A judgment in favor of Mr. Dutton and against AseptiScope on all claims for relief alleged herein;

B. An order requiring AseptiScope to disclose to Mr. Dutton all pending patent applications or issued patents, both foreign and domestic, that disclose or claim Mr. Dutton's peeler pin invention;

C. An order requiring AseptiScope to take all steps necessary to correct the inventorship of the '782 Patent, and any other patent or patent application disclosing or claiming Mr. Dutton's peeler pin invention;

D. An order directing the United States Patent and Trademark Office to correct the inventorship of the '782 Patent to add Mr. Dutton and remove any currently named inventor who is found not to have made an inventive contribution;

E. An order finding that this is an exceptional case, and pursuant to 35 U.S.C. § 285, awarding Mr. Dutton his attorneys' fees and non-taxable costs;

F.      An order awarding Mr. Dutton his taxable costs; and

G.      An order awarding Mr. Dutton such other and further relief as the Court may deem just and proper;

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

Dated: June 22, 2023      By: */s/ Jason J. Jardine*
                                           Jason J. Jardine
                                           Ben A. Katzenellenbogen
                                           Ashley C. Morales

                                           Attorneys for Plaintiff,
                                           CHRISTOPHER DUTTON

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Christopher Dutton demands a trial by jury of all issues raised by the pleadings which are triable by jury.

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

Dated: June 22, 2023          By:  /s/ Jason J. Jardine
                                    Jason J. Jardine
                                    Ben A. Katzenellenbogen
                                    Ashley C. Morales

                                    Attorneys for Plaintiff,
                                    CHRISTOPHER DUTTON

56046083